# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**April 7, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**DAVID LAMBERT,**
**Claimant Below, Petitioner**

**v.) No. 25-ICA-293**          (JCN: 2024012608)

**QUANTA SERVICES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner David Lambert appeals the June 27, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Quanta Services, Inc. ("Quanta") timely filed a response.[1] Mr. Lambert did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which rejected the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Lambert initiated the claim at issue here on December 22, 2023, when he completed an Employees' and Physicians' Report of Occupational Injury form, alleging that he injured his right arm and shoulder on August 24, 2023. Mr. Lambert reported that he injured his right arm while lifting a cable while working as a truck driver for the employer. A medical provider at Raleigh General Hospital completed the physician's section of the claim form and described the injury as right shoulder pain that resulted from an occupational injury. The medical provider indicated that Mr. Lambert received his initial treatment on December 22, 2023.

Mr. Lambert's prior medical history is relevant to this matter. On February 6, 2023, Mr. Lambert sought treatment for right shoulder pain, and an x-ray of his right shoulder revealed no fracture or dislocation, but showed degenerative changes in the acromioclavicular joint. Benjamin O'Kelly, D.O., examined Mr. Lambert and diagnosed a right shoulder strain, noting decreased range of motion in the shoulder. On February 7, 2023, Mr. Lambert saw Neesha Smith, CNP, in the orthopedics department at Holzer

---

[1] Mr. Lambert is represented by G. Patrick Jacobs, Esq. Quanta is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

Clinic, for right shoulder pain and movement difficulties, ongoing for two to three weeks. Mr. Lambert rated his pain level between a five out of ten to an eight out of ten. Nurse Smith noted moderate pain to palpation over the anterior capsule and subacromial bursa. Nurse Smith diagnosed osteoarthritis of the right acromioclavicular joint and tendinitis of the right rotator cuff and administered a steroid injection in Mr. Lambert's right shoulder. On April 7, 2023, Mr. Lambert saw Tammy Ball, FNP, for a check-up, and he asked for another cortisone injection to address continued right shoulder pain. Nurse Ball referred Mr. Lambert to Nurse Smith. On April 25, 2023, Nurse Smith examined Mr. Lambert for complaints related to pain and trouble with motion in his right shoulder. Nurse Smith provided a second steroid injection in Mr. Lambert's right shoulder. Finally, on July 25, 2023, Mr. Lambert saw Nurse Smith and reported a recent emergency room visit where he was told that he had tendonitis in his right shoulder. Mr. Lambert complained to Nurse Smith of constant aching and throbbing pain from the top of his shoulder down to his elbow. Mr. Lambert received a third steroid injection in his right shoulder.

Turning to the alleged injury in this claim, on August 24, 2023, Mr. Lambert saw Linde Collingwood, CNP, for complaints of pain in his right biceps area. Mr. Lambert reported that he was bending and lifting a cable and felt "tearing" and instant pain in his biceps. He reported that the pain extended from the bend in his elbow to his shoulder. Nurse Collingwood specifically noted that he did not report shoulder pain, and she found full range of motion in his elbow and shoulder. Further, Nurse Collingwood found that his biceps tendon was intact, but tender from the distal to the proximal insertion site. Mr. Lambert was instructed to use ice, over-the-counter medications, and rest. At follow-up visits with Nurse Collingwood the following morning, and on August 26, 2023, Mr. Lambert reported improvement, with only mild tenderness to deep palpation of the muscle body, and minimal pain when lifting. At the visit on August 26, 2023, Mr. Lambert reported that he lifted a heavy bag of ice the previous day and aggravated the biceps, and Nurse Collingwood instructed him to continue the treatment plan and to avoid aggravating movements. Mr. Lambert saw Nurse Collingwood on August 28, 2023, August 29, 2023, and September 5, 2023; at each visit, he noted that his biceps was better. Nurse Collingwood kept the treatment plan in place. On September 8, 2023, Nurse Collingwood released Mr. Lambert from her care after he reported that his right biceps was "pretty much better" and he only had aches "once in a while" but no "real pain."

After seeing Nurse Collingwood on September 8, 2023, Mr. Lambert's treatment record does not show that he received any additional medical treatment for the right arm until December 22, 2023, when he presented to the emergency room at Raleigh General Hospital complaining of a work-related injury to his right shoulder. At the hospital, Mr. Lambert reported to Natalya Grigoryan, M.D., and Timothy Hontz, PA-C, that "multiple weeks ago" he picked up a heavy cable and felt pain in his shoulder and that he had constant pain radiating down to his right elbow. Further, he reported a change in the appearance of his right biceps muscle. X-rays of Mr. Lambert's right shoulder were negative for fracture

or acromioclavicular separation. Dr. Grigoryan diagnosed Mr. Lambert with right shoulder pain and discharged him.

On January 3, 2024, Mr. Lambert underwent an MRI of his right shoulder. The MRI revealed the following: a full thickness tear of the supraspinatus tendon; partial tearing of the infraspinatus and subscapularis tendons; abnormal signal throughout the superior labrum, compatible with a labral tear; the intra-articular portion of the biceps tendon is not visualized and is likely torn; and joint effusion. Nurse Ball saw Mr. Lambert on January 31, 2024, for his right shoulder. Nurse Ball noted that Mr. Lambert last worked on December 22, 2023; she took Mr. Lambert off work until April 4, 2024, and referred him to an orthopedic surgeon.

It is undisputed that the claim administrator issued an order dated February 9, 2024, rejecting the claim. While that order is not in our record, according to the Board in its June 27, 2025, order, the claim administrator rejected the claim based upon the following findings: Mr. Lambert failed to immediately report the injury; Mr. Lambert failed to seek medical attention until four months after the injury; and the only diagnosis listed on the claim application is "right shoulder pain," which is not a compensable diagnosis.[2] Mr. Lambert protested the claim administrator's February 9, 2024, order to the Board.

On March 4, 2024, Gregory Cvetanovich, M.D., performed an arthroscopy of Mr. Lambert's right shoulder with rotator cuff repair, debridement, subacromial decompression/acromioplasty, and tenodesis of the biceps long tendon. Postoperatively, Dr. Cvetanovich diagnosed: right shoulder full thickness rotator cuff tear involving the supraspinatus and subscapularis tendons; right shoulder biceps tenosynovitis; right shoulder labral tear; and right shoulder impingement. Dr. Cvetanovich noted degeneration and tearing in the anterior and posterior labrum.

Mr. Lambert testified on April 11, 2024, that he injured his right shoulder at work when he reached for and pulled up a cable and felt a tear in his shoulder. Mr. Lambert described the pain in his shoulder as "instant" and as if a knife went directly into his right shoulder. Mr. Lambert denied the claim administrator's allegations that he failed to provide his employer with immediate notice of the injury and failed to seek medical care for almost four months. Instead, Mr. Lambert testified that he immediately notified his supervisor (although not in writing) and the safety director, who referred him to the on-site nurse. The nurse, Mr. Lambert said, treated him for the injury between August 24 and September 8, 2023. As to the claim administrator's finding that "pain" is a symptom and not a diagnosis,

---

[2] Mr. Lambert also testified on April 11, 2024, that the claim administrator rejected his claim on February 9, 2024, on the following bases: 1) he failed to provide the employer "with written notice of the injury"; 2) that he failed to seek immediate medical attention for the injury; and 3) that pain is a symptom, not a diagnosis. Mr. Lambert's testimony disputed all three of these findings.

Mr. Lambert responded that until the MRI was performed, he did not have an exact diagnosis. After the MRI, he saw an orthopedic surgeon who performed surgery in March of 2024. Further, Mr. Lambert acknowledged that he and many coworkers were laid off work on December 22, 2023. Mr. Lambert stated that on the day he was laid off work, he went to Raleigh General Hospital to initiate a claim for his arm, as it still bothered him and he was concerned that it could be something serious. Mr. Lambert testified that prior to August 24, 2023, he never had medical treatment for his right shoulder nor had he had a prior injury of the shoulder or biceps. Finally, Mr. Lambert requested that his right bicep, right shoulder, treatment, and surgery be covered in the claim.

By order dated June 27, 2025, the Board affirmed the claim administrator's order rejecting the claim. The Board determined that Mr. Lambert failed to prove by a preponderance of evidence that he sustained an injury in the course of and resulting from his employment. It is from this order that Mr. Lambert now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Lambert argues that the Board committed reversible error in holding that he is not entitled to workers' compensation benefits for a right shoulder strain because the evidence shows that he sought medical treatment within the requirements of West Virginia Code § 23-4-15(a) (2010).[3] Mr. Lambert asserts that the Board misapplied the

---

[3] West Virginia Code § 23-4-15(a) provides that an injured worker must file a claim "within six months from and after the injury." There is no assertion that Mr. Lambert did

law, including the standard of review, as the Board drew every possible inference in favor of Quanta. Mr. Lambert contends that he refuted all three reasons the claim administrator gave for denying his claim. He argues that immediately after the injury, he reported it to his supervisor and the safety director and received treatment from the on-site nurse. Further, Mr. Lambert argues that the accurate diagnosis was unavailable until the MRI on January 3, 2024, revealed tears in the supraspinatus, infraspinatus, and subscapularis tendons, and a likely biceps tendon tear. We disagree.

We note that three elements must coexist in workers' compensation cases to establish compensability: (1) a personal injury, (2) received in the course of employment, and (3) resulting from that employment. Syl. Pt. 1, *Barnett v. Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970); *Sansom v. Workers' Comp. Comm'r*, 176 W. Va. 545, 346 S.E.2d 63 (1986). "In order to establish compensability an employee who suffers a disability in the course of his employment must show by competent evidence that there was a causal connection between such disability and his employment." Syl. Pt. 3, *Deverick v. State Comp. Dir.*, 150 W. Va. 145, 144 S.E.2d 498 (1965).

Here, the Board found that Mr. Lambert did not establish that he sustained a work-related injury to his shoulder on August 24, 2023. The Board noted that on the day of the alleged injury, Mr. Lambert sought treatment for right bicep pain and that throughout his treatment from August 24, 2023, through September 8, 2023, with Nurse Collingwood, he denied any right shoulder pain or symptoms. The Board also found that Mr. Lambert's testimony denying prior medical treatment for his right shoulder was refuted by medical evidence documenting that he had a significant, symptomatic, preexisting right shoulder condition for which he was treated with injections and was not credible. Finally, the Board cited West Virginia Code § 23-4-1c(a)(2) (2009) and noted that Mr. Lambert continued to work following the alleged work injury and only filed his claim after he was laid off work, four months later.[4] The Board found that this fact weighed against a finding of compensability.

_____

not meet this standard. However, West Virginia Code of State Rules § 85-1-3.1 (2009) provides, in pertinent part that:

> "Immediately after sustaining an occupational injury, a claimant should 1) seek necessary medical care; 2) immediately … give or cause to be given to the employer … a written notice of the occurrence of the injury; and 3) file a workers' compensation claim…Provided, That under no circumstances shall the fact that notice of an occupational injury was provided by the claimant later than two (2) working days from the time of the injury be the sole basis for denial of a claim…."

[4] West Virginia Code § 23-4-1c(a)(2) provides that:

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Lambert did not establish by a preponderance of the evidence that the requested conditions were causally related to the compensable injury. Further, Mr. Lambert has not shown error in the Board's application of West Virginia Code § 23-4-1c(a)(2).

As set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's order rejecting Mr. Lambert's claim.

Accordingly, we affirm the Board's June 27, 2025, order.

Affirmed.

**ISSUED:** April 7, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

---

In making a determination regarding the compensability of a newly filed claim … the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, shall consider the date of the filing of the claim for benefits for a determination of the following:
(A) Whether the claimant had a scheduled shutdown beginning within one week of the date of the filing;
(B) Whether the claimant received notice within sixty days of the filing that his or her employment position was to be eliminated, including, but not limited to, the claimant's worksite, a layoff or the elimination of the claimant's employment position;
… or
(D) Whether the claimant has received unemployment compensation benefits within sixty days of the filing. In the event of an affirmative finding upon any of these four factors, the finding shall be given probative weight in the overall determination of the compensability of the claim or of the merits of the reopening request.

6